JOHN WARDELL BROWN vs. SARAH E. RICHARDS and others, the widow and·heirs-at-law of Jesse Richards, deceased.

1. A widow joined with the heirs-at-law of her deceased husband in the execution of two mortgages to satisfy a part of the indebtedness of his estate, pledging her individual interest in the lands of which he died seized, to the payment of that specified indebtedness. To secure the remaining indebtedness, the heirs-at-law, alone, subsequently executed other mortgages upon the same real estate. By an arrangement between the executors and the subsequent mortgagees, they were authorized to enter upon the mortgaged premises, sell all the standing timber fit for market, receive the proceeds of sales, and appropriate them towards the payment of the mortgages in such proportions as might be agreed upon by the mortgagees respectively. Under this agreement sales of timber were made to a large amount. By a subsequent arrangement between the first mortgagee (complainant in this suit) and the subsequent mortgagees, the proceeds of these sales were applied, not to the complainant's mortgage, which was executed by the widow, but to the subsequent mortgages, the holders thereof guaranteeing the pay· ment of the complainant's mortgages. *Held*—

*First.* The interest of the widow cannot be thus subjected to the encumbrance of the entire mortgage debt. It is liable only for the debt secured by the mortgages to the complainant, executed by herself. Beyond that, it is unencumbered.

*Second.* The widow is entitled to have her claim for dower satisfied out of the proceeds of the sale of the land, as though the entire net proceeds of the sale of the timber had been applied toward the satisfaction of the complainant's mortgage.

*Third.* To afford the widow the protection to which she is entitled, and to secure to her the full value of the dower in the equity of redemption, it is necessary that the entire value of the timber cut upon the premises should be credited upon the mortgage to which she became a party.

2. A widow is entitled to dower in wild or unimproved lands.

3. If the land be sold under the mortgage, the value of the dower in woodland is ascertained by the same rule which is applicable in any other case.

4. Where a wife's inheritance has been sold and conveyed by the husband and wife, and the proceeds have been used by the husband, without any contract with the wife for repayment, the wife, after the death of the husband, has no claim in equity upon the real estate of the husband, as against his creditors.

*Mr. J. Wilson,* (with whom was *Mr. J. L. N. Stratton*) for the Mount Holly Bank, one of the defendants.

The bill is an ordinary bill for foreclosure, against the widow, the executors and heirs of Jesse Richards, deceased.

The complainant's mortgages were given by three of the sons and devisees, who were also executors, also by the widow and other children, for $37,000, on Batsto, and other tracts in Burlington and Atlantic. The complainant released all the lands in Atlantic, and part of those in Burlington.

The Mount Holly Bank holds a subsequent mortgage for $20,386, and the Medford Bank for $6695, executed by the same parties, except the widow. There were also sundry subsequent judgments.

There was a prior mortgage upon the premises executed by Jesse Richards and wife to Quinton Campbell, in trust, for $13,475.

The banks, by their answer, admit the priority of the complainant's mortgage, and set up rights under their own.

The controversy principally arises under an agreement between the executors and the banks, dated the 4th of January, 1858.

By the will, the widow was to receive the interest of $100,000, instead of dower, and there is strong reason to believe that the executors, with her consent, so managed the estate as to give her that amount instead of dower. Large tracts of land were sold by the executors, the complainant releasing his encumbrance, and the widow releasing her dower.

Subsequent to the agreement of 4th January, 1858, and by virtue of that agreement, repeated sales of timber were made by the executors, by whom the conditions of sale were signed.

The widow never applied to have her dower assigned. The presumption is that she determined to accept the provision made by the will, in lieu of dower. The expectation was that the estate would be sufficient to pay her that amount.

The widow, before the assignment of dower, has no *estate;* it is a mere chose in action. 4 *Kent's Com.* 61; *Den* v. *Dodd,* 1 *Halst. R.* 367; *Andrews* v. *Andrews,* 2 *Green's R.* 141; *Davison* v. *Davison,* 3 *Green's R.* 235, 241.

If dower had been assigned, she would have been but tenant for life, and entitled only to estovers.

In some of the states it is held that the widow is not entitled to dower in wild lands, though in this state it is otherwise. *Doughty* v. *Doughty, February T.* 1856, manuscript opinion of Chancellor Williamson. In regard to wild lands, the widow could have only nominal damages for the waste by cutting timber.

The timber belongs to the heirs, or those having the estate of inheritance. *Whitfield* v. *Bewit,* 2 *P. W.* 240; *Bewick* v. *Whitfield,* 3 *P. W.* 267; *Pyne* v. *Dor,* 1 *Durnf. & East.* 55.

But admitting the widow's right, her dower is barred. The sales were being made for nearly three years, with her knowledge and assent. Her answer does not deny ignorance of the agreement made by the executors. A widow may waive dower by her acts.

If dower is not barred, the court, after the sale of the timber and credit for the proceeds given on the mortgages of the bank, cannot transfer those credits to a prior mortgage.

The answer also claims that the proceeds of the property of Mrs. Richards, sold in Philadelphia, were expended on the Batsto property, and on that ground she claims the protection of this court. That property was sold, and the investment made prior to the date of the mortgage, and cannot affect or impair the legal rights of the mortgagees.

*Mr. Woodhull,* for Mrs. Richards.

The widow executed the complainant's mortgage, but was no party to the mortgages to the banks. Her dower right was pledged merely as a security for the debt to the complainant. There is equity, therefore, in applying the proceeds of sales of timber growing on the premises to the first

mortgage debt. None whatever in applying it to the satis-
faction of subsequent mortgages.

The money raised by the complainant's mortgage was to
pay the debt of the husband. The dower right was pledged
as surety, not as principal. Equity will subrogate her to the
rights of the mortgagee. *Parteriche* v. *Powlet*, 2 *Atk.* 383.

The private arrangement between the executors and the
banks was prejudicial to the rights of the widow as surety.
Its effect was to load the dower right with a double burden.
It operated as if she had signed both mortgages, and im-
posed upon her a burden which she never assumed.

The amount of sales of woodland under the agreement,
amount to nearly $50,000. The widow does not complain
of the appropriation of the funds to the prior mortgage
which she had signed; but only to the mortgages to the
banks.

The widow is entitled to be exonerated out of the estate,
from the loss sustained by the cutting of the timber.

If the principal and surety fund are both before the court
and under its control, the court will direct the debt to be
paid out of the principal fund. 1 *Story's Eq.*, § 638 ; *Hawley*
v. *Bradford*, 9 *Paige* 201.

But if the widow be regarded merely as surety, not as
principal, the court will compel the transfer of credit from
the subsequent to the prior mortgage. The fund was within
the control of the prior creditor. He fails to enforce his
right, and permits the subsequent mortgagees to obtain
priority, to the prejudice of the widow.

There is no evidence of an election by the widow to take
the provision under the will in lieu of dower. And no ground
upon which such election can be presumed.

Though the widow, before the assignment of dower, has no
legal estate in the land, she has rights which equity will
enforce. If the timber be sold, she is entitled to the interest
of one third of its value during life.

By the sale of her separate property, and the appropriation
of the proceeds by the husband to his own use, she became,

in equity, a creditor of the husband, and entitled to be re-imbursed out of his estate.  2 *Story's Eq.*, § 1373.

Mr. Woodhull also cited 3 *White & Tudor's Lead. Cases*, 739; *Neimcewicz* v. *Gahn*, 3 *Paige* 614; *S. C. on Appeal*, 11 *Wend.* 312; *Pawlet* v. *Delaval*, 2 *Vesey, sen.*, 663–9; *Clinton* v. *Hooper*, 3 *Bro. Ch. R.* 201; *Innes* v. *Jackson*, 16 *Vesey* 356, 367; *Tabele* v. *Tabele*, 1 *Johns. Ch. R.* 45; *Titus* v. *Neilson*, 5 *Johns. Ch. R.* 452; *Paton* v. *Murray*, 6 *Paige* 474; *Harrison* v. *Eldridge*, 2 *Halst. R.* 411.

THE CHANCELLOR.  Jesse Richards, late of the county of Burlington, died on the 13th of June, 1854, seized of a large and valuable real estate, consisting of glass works, buildings, water power, and extensive tracts of land in the counties of Burlington and Atlantic.  By his will he ordered his estate to be divided between his widow and heirs, in the proportions specified by law.  And if his wife desired to receive a fixed sum in lieu of dower, he directed his executors to secure to her an annuity for life, not greater than the interest of $100,000, at the rate of six per cent.  He also authorized his executors to make sale of his standing timber and lands for the payment of his debts.

At the death of the testator his estate was largely in debt. To satisfy a part of this indebtedness, two mortgages were given by his widow and heirs-at-law to the complainant, for the sum of $37,000, upon the real estate of which the testator died seized.

The estate was also indebted to the Farmers Bank of New Jersey, and to the Burlington County Bank at Medford, in a sum exceeding $27,000, which was secured by two mort-gages upon the same real estate, executed by the heirs-at-law of the testator, but not by the widow.  The complainant's mortgages were first in order of priority.

The total indebtedness secured by the mortgages is about $64,000.  The widow mortgaged her interest in the estate to secure the debts due to the complainant, amounting to $37,000, but not the debts due to the banks.

In this state of things, on the 4th of January, 1858, an agreement was entered into between the executors and the banks, in which it is recited that the mortgaged premises consisted principally of large tracts of pine and cedar timber, and that it was hoped that by a sale of the timber and of such portions of the land as the heirs were willing to dispose of, sufficient money might be realized to satisfy the whole of the mortgage debts, with interest. And the banks, by their agents, were thereby authorized to enter upon the mortgaged premises, to sell all the standing timber fit for market, to receive the proceeds of sales, and appropriate them towards the payment of all the above mentioned mortgages, in such proportions as might be agreed upon by the holders of said mortgages respectively.

Under this agreement, sales of timber were effected to an amount exceeding $26,000. By a subsequent arrangement between the complainant and the banks, the proceeds of these sales were applied, not to the complainant's mortgage, which was executed by the widow, but to the subsequent mortgages of the banks; the banks guaranteeing the eventual payment of the complainant's mortgage.

As between the executors and heirs-at-law of Richards and the several mortgagees, this arrangement may have been perfectly just and equitable. The estate of the heirs was liable for the payment of all the mortgage debts, and to them it was a matter of indifference which mortgage was first satisfied. As the payment of the complainant's mortgage was guaranteed by the banks, his interests were not prejudiced. But the operation of the agreement, as it is now sought to be enforced against the widow, is most inequitable and unjust. She mortgaged her interest in her husband's estate to secure the debt due to the complainant alone. The operation of the arrangement is to subject her interest to the encumbrance of the entire mortgage debt of $64,000. To that she never assented. The mortgage was executed by her after her husband's death, pledging her individual interest in the lands of which he died seized to the payment of a

specified indebtedness. Beyond that, her interest in the estate of her husband is unencumbered.

She was no party to the agreement between the executors and the mortgagees for the sale of the timber. It is alleged that she knew of the existence of the agreement, and that the timber was being cut upon the mortgaged premises. But there is no evidence that she knew the terms of that agreement, or that it could operate to the prejudice of her rights. The fair presumption is that she understood and believed, as by her answer she alleges, that the proceeds of the sales of the timber were to be appropriated to the payment of the mortgages in the order of their priority.

There is no evidence of a renunciation, express or implied, by the widow, of her dower in the premises, or of an assent upon her part, to accept the pecuniary provision made by the will of her husband in lieu of her dower in the estate. So far as appears by the evidence, none of the real estate has been sold since the death of her husband, without a release of dower being executed by the widow.

There is no difficulty in affording the widow the protection she claims by her answer. All the mortgages, it is admitted, so far as they remain unsatisfied, virtually belong to the banks. The widow is entitled to have her claim for dower satisfied out of the proceeds of the sale of the land, as though the entire net proceeds of the sale of the timber had been applied toward the satisfaction of the complainant's mortgage.

I understand the law to be settled in this state, that a widow is entitled to dower in wild or unimproved lands. It was so held by the Chancellor (Williamson), in the unreported case of *Doughty* v. *Doughty*, at February Term, 1856. By the terms of the statute, she is entitled to dower in all the real estate whereof the husband was seized of an estate of inheritance at any time during coverture. She is entitled to dower in an equity of redemption. If the land be sold under the mortgage, the value of the dower in woodland is ascertained by the same rule which is applicable in any other

case. One third of the net proceeds of sale, after satisfying the mortgage debt, would be invested for the benefit of the widow, or she would receive a gross sum of equal value, calculated upon the principle of life annuities.

But so far as appears by the evidence, all the lands in question, from which the wood has been cut, were used in connection with, or as mere appendages of the glass works, or other manufactories or improvements upon the land. So far as the timber upon the Batsto tract is concerned, it was undeniably held for the benefit of the works upon that tract. It constituted a material element in the value of the improvements. Whether it added in a greater or less degree to the value of the works, the doweress is clearly entitled to the benefit of the increased value of the estate derived from that source.

It is true, as was suggested upon the argument, that she is entitled to but one third of the value of the wood cut upon the premises. That is all she asks. But to afford her the protection to which she is entitled, and to secure to her the full value of her dower in the equity of redemption, it is necessary that the entire value of the timber cut upon the premises should be credited upon the mortgage to which she became a party, and by which she pledged her individual interest in the estate, as security for the debts of the heirs.

The widow also claims, by her answer, an allowance out of the estate of her husband of an amount equal to the value of certain real estate which she inherited from her father during her coverture, the proceeds of the sale of which went into the hands of her husband, were invested in his business, and contributed to the accumulation of the large and valuable real estate of which he died seized. The wife's inheritance was sold and conveyed by the husband and wife prior to the year 1833, and was used by the husband without any contract for repayment. Under such circumstances, I know of no equity which the wife can claim, as against the creditors of the husband. No secret equity of the wife, however strong it might be against the estate of the husband, could avail against mortgagees, without notice of the equity.